UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JONATHAN ADKINS | CIVIL ACTION NO. 09-cv-0898 |
| VERSUS | JUDGE HICKS |
| WARDEN, LOUISIANA STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Jonathan Earl Adkins ("Petitioner") was convicted of armed robbery at a bench trial held before Caddo Parish District Judge Roy L. Brun. He was adjudicated a fourth-felony habitual offender and received an enhanced sentence of life imprisonment. He pursued a direct appeal, State v. Adkins, 907 So.2d 232 (La. App. 2d Cir. 2005), writ denied, 956 So.2d 607 (La. 2007), and a post-conviction application. He now seeks federal habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Relevant Facts**

Detective Lane Smith testified that he received a report of a robbery at the Jiffy Pak on Linwood Avenue in Shreveport just after 1:00 o'clock one afternoon. He responded within minutes and interviewed the two victims who worked in the store. One of the them, Salma Halim, described the suspect as over six feet tall, thin to medium build, wearing dark clothing. Mrs. Halim said that she recognized the man as a regular customer who came in the store on almost a daily basis. She had engaged in conversation with him before and she

was familiar with his voice and height. She did not state whether he was wearing short or long pants, had tattoos, or had any gold teeth.

The general description was broadcast to other officers. Petitioner was detained less than an hour later, within blocks of the store. Det. Smith told other officers to take Mrs. Halim to the location where the suspect was detained to conduct a one-on-one identification. Smith did not attend that event, but he was informed that Halim made a positive identification.

Det. Smith interviewed Petitioner at the police station. After a waiver of Miranda rights, Petitioner said that he had no part in the robbery and had nothing else to say. A video tape from the store's surveillance camera captured the robbery and was admitted into evidence. The record suggests that the robber shown on the video is of similar build to Petitioner, but there was not a clear view of his face or other identifying characteristics. Tr. 113-30.

Mrs. Halim testified that she had owned and worked in the store for almost 10 years at the time of the robbery. She said that she had many regular customers and that she knew them like family. It was a tough neighborhood, and customers often came in with guns underneath their shirts, but most customers treated her with respect and called her Mom. Petitioner had been in the store many times: "Every day. And not one time, ten times, maybe." Mrs. Halim said that he once told her he lived on nearby 76th Street. She said he sometimes came in the store and did not buy anything, but she would give him a little piece

of candy even if he did not have money. She did not know his name, but she did know his face, his walk, voice, and height.

Business was slow after lunch that day. Mrs. Halim heard the bell ring that signaled the door opening. A man wearing dark shorts and shirt entered, with a mask covering his eyes but not his mouth. The man tried to use his shirt to cover his mouth and the rest of his face, but it was a nylon shirt that she could see through. The only thing he said was, "Give me the money," which he repeated two or three times. She replied, "Don't shoot, I give you the money," and opened the cash drawer for him. He took all the money, which she estimated at over $500, and left.

Mrs. Halim testified that she told the detective that she recognized the man as a regular customer who lived on 76th Street. Within about 20 minutes, the police asked her to see if she could identify the man. She rode in the back seat of a police car and saw Petitioner standing with police. He was wearing different clothing, but Mrs. Halim was certain that he was the man who committed the robbery. She repeated in her testimony many times how absolutely certain she was about the correct identification of the robber. She explained, "I know him like I'd know my son. I'm not against anybody, but this is the truth."

The next day, Petitioner called her collect from jail and said he would return the money if she would drop the case. He called three or four more times, but she told him not to call again and that the matter was out of her hands. Although it is likely hearsay, Mrs. Halim offered the following testimony without objection:

> And next day, a lady come to the store and she tell me that this is the one who the police took him. He come to the house with the money and asked me to hold the money. I tell him, 'No, I can't hold the money.' This is - - I afraid."
> A lady, a young lady, come to the store.

Tr. 130-66.

Officer David Fuhrman testified that Mrs. Halim described the suspect as a black male, about 6'2", 200 lbs., and wearing all dark clothing. When Petitioner was detained about 20 minutes later, Fuhrman put Mrs. Halim in the back seat of his patrol car and took her to the nearby location where officers were standing with Petitioner. There were about 15 other civilians milling about the area. As soon as Mrs. Halim saw the suspect, she was adamant, saying, "That's him. That's him. That's him." Tr. 167-74.

Cpl. S. W. Plunkett testified that he received a radio broadcast to look for a tall, black male, about 6'2" to 6'3", wearing a dark top and dark shorts. He saw a man who matched that general description getting into a car about a block away from the Jiffy Pak. Plunkett and his partner stopped the car about two blocks later and interviewed Petitioner and the other people in the car. Petitioner was standing by one of the police cars, not handcuffed, when Mrs. Halim was brought to the scene. Petitioner told Plunkett that he had a good job and did not commit the robbery. Officers did not find a gun, money, mask, or other evidence of the robbery on Petitioner's person or in the car. Tr. 174-88.

Petitioner testified that he lived on Melrose, about three blocks from the Jiffy Pak, which was the closest store to his house. He said he would have been at his job that day, on Barksdale Air Force Base stocking shelves at the commissary, but he lost his I.D. and could

not get on base. He testified that instead he spent time at Marco's house across the street from the Jiffy Pak, and he later went to Marcus Stephenson's house on 77th to play dominoes. He was leaving that house with some others when police stopped the car.

Petitioner admitted that he was 6'2" and weighed about 200 pounds, though he had gained some weight in jail. He was wearing a black tank top and gray shorts when arrested, but he had only $22 on him, which he said he earned from his job. Petitioner admitted he was a regular customer of the Jiffy Pak but said he had not been in it that day. He testified that two of his front teeth have been gold since he was 15 years old, and he has a tattoo of his mother's name on the right side of his neck and a "Hood Ripper" tattoo on his right forearm. When asked about the significance of the latter tattoo, Petitioner said it was "because I rip my hood. Just like a gangbang thing." He admitted to prior convictions on drug charges; he believed that they were misdemeanors, but there was some confusion on that point. He admitted to two convictions for burglary, and he was on parole on the most recent of those convictions at the time of his arrest.

Petitioner admitted that he called Mrs. Halim from jail, once when he was in booking and again (collect) after he had been placed in a cell. He admitted he offered to pay her the amount of the stolen money if she would drop the charges. He testified that Mrs. Halim asked why he would want to pay for something he did not take, and he replied that he had just come home from jail and did not want to be there again. Tr. 189-203.

The trial judge listened to extensive argument on the competing views of the evidence. He said that he had "listened carefully to Mrs. Halim as she testified, and I believe she is a

credible witness." He found that Mrs. Halim had no interest in naming one of her customers as a robber if he did not commit the crime, and she was "very positive and adamant in her identification." He also noted that Petitioner admitted calling Mrs. Halim on the telephone. He concluded that the root of the case was identification, and Mrs. Halim's credible testimony proved the State's case beyond a reasonable doubt. Tr. 210.

**Sufficiency of the Evidence**

Petitioner argues that the evidence was not sufficient to support his conviction. In evaluating such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

This claim was presented to the state courts on direct appeal. The appellate court cited the Jackson standard, reviewed the evidence in detail, and concluded that the evidence was sufficient to support the conviction for armed robbery. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a

state-court decision rejecting a sufficiency challenge is reviewed under a twice-deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

Petitioner repeats the arguments he made in state court. He points out that the victim did not note that the robber had gold teeth or tattoos, and he points out that police did not find any money or a gun to connect him to the robbery. The state court considered these arguments and found that the evidence was nonetheless sufficient because positive identification by even a single witness may be sufficient to support a conviction, the case depended largely on an assessment of credibility of competing witnesses, and the lack of description of the gold teeth and tattoos could be attributed to the fact that the victim knew the suspect and did not feel the need to describe in more detail a person she already knew. State v. Adkins, 907 So.2d at 234-36.

Jackson requires the evidence be viewed in the light most favorable to the prosecution, and "the assessment of the credibility of the witnesses is generally beyond the scope of review. Schlup v. Delo, 115 S.Ct. 851, 868 (1995). Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.") The Fifth Circuit has recognized that the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction. U.S. v. King, 703 F.2d 119, 125 (5th Cir. 1983). The trial judge made a considered first-hand assessment of the credibility of the key witnesses, and that assessment was upheld on direct appeal. One

might quibble with the verdict if it were being decided in the first instance, but this federal habeas court cannot say that the state court's adjudication of this issue was not only incorrect but an objectively unreasonable application of the deferential Jackson standard. Accordingly, habeas relief is not permitted on this claim.

**Waiver of Jury**

Petitioner argues that the record does not reflect a knowing and intelligent waiver of his constitutional right to a jury trial. Petitioner presented this claim on direct appeal. The State argues that he did so solely in terms of state law so did not exhaust a federal claim cognizable on habeas. See Baldwin v. Reese, 124 S.Ct. 1347 (2004). Such a determination is made by looking to the briefs filed in state court. Smith v. Digmon, 98 S.Ct. 597 (1978); Soffar v. Dretke, 368 F.3d 441, 467 (5th Cir. 2004). The State's memorandum does not contain a record reference to the relevant briefs, and the court has not been able to locate them in the record submitted by the State. Petitioner did attach state court briefs to one of his submissions (Doc. 4), and the appeal brief filed with the Second Circuit did invoke the United States Constitution's Sixth Amendment guarantee of a jury in connection with this argument. It appears that his application to the Supreme Court of Louisiana is not in the record, but the court will assume that it repeated the federal nature of the claim, as is usually the case.

Petitioner argued on direct appeal that a minute entry indicated he waived his right to a jury trial, but the trial transcript bore no evidence of such a waiver. A transcript does show, however, that Petitioner appeared in court with counsel, who informed the court that

Petitioner wished to waive his right to jury trial and proceed with a bench trial. The court asked Petitioner if he understood that he had a right to a trial by jury and that at the trial he could testify, have his lawyer cross-examine witnesses, call witnesses, and require the State to prove its case. He advised Petitioner that he had the right to waive the jury and be tried by a judge alone. Petitioner, who said he went through the 10th grade in school and could read and write, said he understood these things and wished to waive the jury. Tr. 102-03. The state appellate court reviewed this record, noted that Petitioner was familiar with the criminal justice system from five prior guilty pleas, and concluded that the claim had no merit. State v. Adkins, 907 So.2d at 236-37.

An application for habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has recognized that persons charged with a felony in state courts have a right to a jury trial, but they also have the right to waive trial by jury. Generally, waiver of a constitutional right must be knowing and intelligent, and the court must indulge every reasonable presumption against waiver of fundamental constitutional rights.

The Fifth Circuit applied these principles in Scott v. Cain, 364 Fed. Appx. 850 (5th Cir. 2010) when the petitioner argued that his waiver was not knowing and intelligent

because the trial judge did not hold a full colloquy to discuss the jury trial process.[1] The Fifth Circuit rejected the claim because, among other reasons, "neither [the Fifth Circuit] nor the Supreme Court has defined fact-specific constitutional minima for a valid jury waiver, found a jury waiver insufficient in a situation analogous to Scott's, or required a set colloquy before a jury waiver can be accepted." Scott, 364 Fed. Appx at 855.

Petitioner in this case received a much more thorough colloquy than the prisoner in Scott. This record establishes a knowing and intelligent waiver made with the advice of counsel. Petitioner's claim should be denied. See also Hargrave v. Lege, 2010 WL 1930594,

---

[1] The judge in Scott held an off-the-record bench conference with the prosecutor and defense counsel. The following exchange, which led to Scott's Sixth Amendment claim, followed:

BY THE COURT:
All right.

Sir, you have a right to be tried before a Judge or a Jury.

Make your selection.

BY THE DEFENDANT:

Judge, Your Honor.

BY THE COURT:

All right.

You want a judge trial.

Are we prepared to go forward with this trial now?

(Counsel indicated they were ready, and the trial began.)

\*\*10-11 (W.D. La. 2010)² (rejecting a similar jury waiver claim) and Pierre v. Leger, 2011 WL 2559879, \*\*6-7 (W.D. La. 2011)³ (state-court ruling that counsel can waive the right to a jury trial on behalf of his client when the record indicates that the client's assent has been knowingly given was not objectively unreasonable). Petitioner has not met his heavy burden under Section 2254(d) of showing that the state court's resolution of this issue was an objectively unreasonable application of law clearly established by the Supreme Court.

**Ineffective Assistance of Counsel**

Petitioner argues that counsel was ineffective for not calling as witnesses Marcus Stephenson and Sally Robinson. Petitioner testified at trial that he was at Marcus Stephenson's house at the time of the robbery. Tr. 190. Sally Robinson was an employee in the Jiffy Pak. Mrs. Halim testified that Robinson was working in the deli section of the store, saw the robber enter, and ran to the kitchen to hide. Mrs. Halim said that it was possible for a person in the kitchen to see the register area, but it was not said whether Robinson saw the robber again after she entered the kitchen. Tr. 151-53.

According to a police report, Sally Robinson told an officer that she looked up and saw a black male about 6'2" and weighing about 200 lbs. coming in the front door. Tr. 19. He was wearing a black shirt and dark shorts, and he pulled a small black revolver out of his

---

² Magistrate Judge Hanna's Report and Recommendation was adopted by Judge Doherty at Hargrave v. Leger, 2010 WL 1930955 (W.D. La. 2010).

³ Magistrate Judge Hanna's Report and Recommendation was adopted by Judge Haik at Pierre v. Leger, 2011 WL 2560267 (W.D. La. 2011).

pants. She took off running to the back of the store and did not notice much more. Another report stated that Robinson told an officer the suspect had his shirt up over his face, then dropped the shirt when he came through the door. She said he had a black mask on, but the mask was pulled down under his chin. Robinson came out of the kitchen after the robber left, and Mrs. Halim reportedly told her that she knew who the suspect was because he came in the store every day. Tr. 24. The reports do not indicate that Robinson herself recognized the robber.

     Petitioner presented these arguments in his post-conviction application. The State submitted an affidavit from defense counsel in which he testified that Robinson's statement to police was such that if she testified consistent with it, it would not have exculpated Petitioner, and her credibility would be in doubt if she gave different testimony. Counsel testified that he did investigate the case and learned that both Sally Robinson and Marcus Johnson were convicted felons, so their testimony would be subject to impeachment. He decided the best strategy was to not call them as witnesses. Tr. 135-36. The trial court accepted that evidence and found that Petitioner had not met his burden. Tr. 137-38. The appellate court issued a one-sentence decision that summarily denied a writ application. Tr. 140. The Supreme Court of Louisiana denied writs without comment. Tr. 142.

     To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

Petitioner repeats his same arguments from the state court proceedings.  He points to no information in the state court record that would undermine the reasonableness of defense counsel's strategy with respect to whether to call these witnesses.  This court must review the state court's decision of the Strickland claim based on the record that was before the state court; it may not hold a hearing to flesh out the claim.  Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).

 "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." Woodfox v. Cain, 609

F.3rd 774, 808 (5th Cir. 2010). For this reason, the Fifth Circuit requires petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. Id., citing Day v. Quarterman, 566 F.3d 527, 538 (5th Cir.2009). Petitioner has not demonstrated that either witness was willing to testify or what they would have said that would favor the defense. He suggests that Stephenson would provide an alibi, but there is no indication from Stephenson that he would do so. And Petitioner offers only speculation that Robinson would have undermined Mrs. Halim by saying that she did not recognize the robber as a customer. Based on the record that was before the state court, the state court's resolution of this claim was quite reasonable, so habeas relief is not permitted with respect to this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of July, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE